Chief Justice Robertson,
delivered the opinion of the court.
In 1818-, Chambers sold to Mason a tract of land, supposed to contain one húndréd and ten acres, in Fayette county, for the pricé of $35 an acre. A small portion of the consideration was paid within á few weeks after the d ate of th e contract. By the contract, Mason covenanted to pay the whole amount of the consideration on the 25th of December, 1818; and Chambers covenanted to convey to him, at the same time, thé legal title, by deed of general warranty.
*402 Mason lias never paid nor tendered the amount due for the land. Chambers did not make nor tender a deed for the land on the 25th of December, 1818. But before the 23d of March, 1819, he had offered to convey the title, if Mason would pay the money; and was able and no doubt willing to convey on the 25th December, 1818.
Mason had refused to rescind the contract and had attempted to sell the land, and had negotiated a sale to Mathews Flournoy, for $200 more than he had agreed to pay Chambers. On the 23d of March, 1819, Mason and Chambers met at Flournoy’s house, in order to carry into effect their executory contract, by the payment of the consideration to Chambers and the conveyance of the title to Mason. It was then and there mutually agreed that Chambers should receive $2000 from Flournoy and the promissory note of Flournoy, on a short credit, for the residue of the consideration, and should make a title to Flournoy as he had covenanted to make it to Mason.
This parol agreement was broken up because Chambers refused to he bound otherwise to Flournoy, than lie was bound to Mason, for the title; and the parties dispersed without doing any thing.
Chambers had a deed prepared on that day, and was ready and willing to deliver it on the payment of the money.
Afterwards, Chambers sued Mason for the consideration, and obtained a judgment in the Montgomery circuit court. This judgment was enjoined by Mason, who prayed, in his hill, for a rescisión of the contract on two grounds.
1st. Because Chambers had not made the title, nor offered to make it on the day on which he engaged by his covenant to make it.
2d. Because, as the bill alleged, Chambers could not convey a complete legal right. On the final hearing, the circuit court dissolved the injunction and dismissed the bill. On an appeal to this court, so much of the decree as decided that the contract should not be rescinded, was affirmed; hut the cause was remanded with instructions to ascertain the profits of the land, from the 25th December, 1818, and to perpetuate the injure *403 tion for their amount; whereby, in effect, the specific execution of the contract was decreed; see Mason vs. Chambers, 111 Mon. 318.
In February, 1828, that suit was abated by the death of Chambers, and nothing more-seems ever to have been done with it. But during its pendency Mason sued Chambers in the Fayette circuit court, in an action of covenant, for failing to convey to him the legal title to the land. The writ issued on the 1st of January, 1824.
On the 28th of January, 1821, this suit in chancery was instituted by Mason, against Chambers, in the Montgomery circuit court. The object of the bill was to enjoin the enforcement of Chamber’s judgment, until Mason should obtain a judgment against him in his suit in Fayette, and then to set-off the one judgment against the other, on the alleged ground, that Chambers would be otherwise unable to satisfy the judgment which Mason expected to obtain against him.
The injunction was accordingly awarded; and in January, 1821, Mason obtained a judgment in the Fayette circuit court for damages against Chambers, exceeding in amount, the judgment of Chambers, against him.
Chambers made his answer to Mason’s bill, a cross bilí, in which he prayed for a specific execution of the contract, and for an injunction, in the mean time, against the judgment of the Fayette circuit court.
In April, 1828, the circuit court of Clarke, to which the suit had been removed on Mason’s application, made an interlocutory decree, directing an assessment of the rents and profits of the land which Chambers had continued to occupy. And at the succeeding term, the court rendered a final decree, whereby, the heirs of Chambers, in whose names the suit had been revived (he having died) were directed to convey to Mason, and Mason was directed to accept the legal title to the land, Mason’s injunction was perpetuated at the costs o.f Chambers’ heirs, for the amount of rents assessed by the commissioners appointed for that purpose; the injunction for-the remainder of the judgment dissolved with 10 per cent damages; costs on the cross bill for a specific execution decreed to the executors and heirs of Chambers, but so much of the cross bill as prayed for *404 a perpetual injunction to the judgment of the Fayette circuit court, was dismissed. As to this last matter the decree says; “and the court overrules so much of the prayer of the cross bill as seeks a perpetual injunction against the aforesaid judgment of the Fayette circuit qourt, as this court disclaims any jurisdiction to enjoin temporarily or perpetually the judgment of any other circuit court. But this court is of opinion, and therefore decree, thaf the defendant is entitled in equity to a perpetual injunction against the collection of said judgment (in as much as by this decree the complainant has obtained the (and aforesaid) by an application to the Fayette circuit court.” ‘
If covenantee has fairly ob-tamed a íreaXof f°r covenant to convey .land, and co venantor alone was delinquent, unless chancellor had possession of the case before judgment covenantee cannot be deprived of his judgment or Compelled to accept a title.
From this decree, each party appealed; Mason, because the court decreed a specific execution of the contract; and Chambers’ representatives, because the court refused to perpetuate the injunction to. the Fay-ette judgment.
1. In reviewing the de,cree, we shall first consider so. much of it as is complained of by Mason.
When a covenantee has obtained a judgment fairlyr f°r a breach of a covenant for the legal title to land which has resulted from the negligence or delinquency ^ covenantor only, and the chancellor had not got-*6n possession of the cause before the judgment w as obtained, the party holding it, should not be deprived of its benefits, nor compelled to accept a title to the land,
But this comprehensive rule of equity, which, it is believed, has no exception, when it is properly understood and applied, does not apply to this case.
The failure to convey the title on the 25th of December, 1818, is not attributable exclusively, if at all, to the negligence or improper delinquency of Chambers. He was able to convey. He was willing to convey. He was not bound by his contract to. convey before the consideration was paid or tendered; the payment of the price of the land, and the conveyance of the title were to be simultaneous. According to strict law, Chambers should have tendered a deed “on the day,” but it was equally the duty of Mason, to tender the money “on the day.” Each party failed; neither seems to have then contemplated any technical advantage; and Mason’s subsequent conduct proves that he did not com *405 plain of any delinquency in Chambers, and did not mean to seek any advantage from his omission to tender a deed, before the money had been paid or oflérred. He afterwards endeavored to sell the land, and evinced--i— an unwillingness to rescind the contract. We have no reason to doubt, that if Mason had payed or offered to pay the money on the 25th December, 1818, he would have received a conveyance of the title; nor are we permitted to doubt, that he might, at any subsequent time, have obtained a deed for the land, by paying the consideration. We cannot, therefore, consider Chambers as alone responsible for the mutual breach of the covenant. He has been guilty of no fraud; he is not chargeable with bad faith or with'wilful or culpable negligence.
When ^ntoi^ancT covenantee have been should,^in M equity, be ra-b®”e" juiced1. P''°'
Judgment for breach of cov-c°£' tainedbycov" enantee dur-pendency chancery brought by himself to retract ^regard-. edas’“wre/air-». ln" obtained,
If Mason had not failed to comply with the covenant, there would, as we believe, have been no breach of it. The best attitude for Mason, in which the case can be placed, is that in which each party will appear equally negligent and equally delinquent. Therefore, neither of them should be allowed in equity (which is equality,) to be exclusively benefitted, or subject to the sóle loss of their mutual failure. Moreover, when Mason was unwilling to rescind the contract and professed to be desirous for its specific execution, Chambers tendered him a deed, but he failed to tender or pay the consideration; and Chambers held an equitable lien on the land.
The judgment was not “'fairly” obtained against Chambers. Pending, the suit brought by Mason himself, for a rescisión, and in which Chambers sought and eventually obtained a decree in effect, for a specific exe-pution, it was unfair and unjust for Mason to attempt to obtain a judgment at law for a breach of covenant, Bj his action at law, he was evidently struggling for an unreasonable advantage. And to permit him to avail himself of the benefits which might result from both suits or either of them, as either might terminate most advantageously to him, would be prostituting legal remedies to purposes of injustice and chicanery. As, by his own act and for his own benefit, he had placed the cause in the possession of the chancellor, he should adhere to his election, and not be suffered to hold an ■ undue advantage, afterwards obtained improperly at law. He cannot complain that the chancellor has de *406 prived him of the benefit of his judgment, when he had given the chancellor jurisdiction of the whole case, before the suit was brought on the covenant.
The chancellor had possession of the cause before the suit at law was brought, and therefore, should be allowed to render such decree as justice dictates and such as he should have given, if no judgment at law had ever been obtained. The former decision by this court should have concluded the controversy.
The record does not exhibit any sufficient reason for withholding a decree for a specific execution, wherefore, the decree to that extent, is approved and affirmed; see Cotton vs. Ward, III Mon. 304; Hughes vs. McKenney, VI Mon. 40; Cook’s adm. vs. Hendricks, IV Mon. 500. And so far, we perceive no error in the principle or details of the decree.
In both suits in chancery, Mason was complainant* The decree in the first suit was rendered against him in 1823; and while that ease wus depending in this court on his own appeal, he commenced his suit at law and this, suit!
He was premature. lie should have awaited the decision on his appeal. If he had done so, there could have been no further difficulty, and should have been no further litigation.
2d. If the chancellor had jurisdiction to enjoin perpetually, the judgment of the Fayette circuit court against Chambers, he ought to have done so. Having decreed a specific execution of the contract, he might, without any express injunction proceed against Mason for a contempt, if he should attempt to enforce his judgment; because, one of the direct consequences of a specific execution is, that Mason has no right in equity to his judgment for damages for a breach of the contract, and the spirit and very substance of the decree would be violated by an enforcement of the judgment.
Nevertheless, if the court had power to enjoin the judgment, Chambers’ representatives were entitled to a decree to that effect, and should not be left to any other, and collateral resource for protection.
It becomes, therefore, material to determine whether the chancellor in Montgomery or Clarke, had powoi to enjoin the judgment of the Fayette circuit court?
When subject ^per°ona]Sor the remedy transitory, fenXnt gives' jurisdiction to thechancellor thecommon law judge.
If this question depended on principié and analogy only, we should feel no difficulty in maintaining the power of the chancellor in Clarke or in Montgomery, to enjoin the judgment of the Fayette circuit court.--• The cause of action was transitory. The judgment, therefore, is for most purposes, ambulatory. It is not essentially local in its character or effects. It may be enforced by action of debt; wherever the obligor or his representatives may be either in or out of the state. It is personal and will follow them.
If the judgment might be enforced out of Fayette county, we perceive no reason why its enforcement might not be enjoined out of Fayette county. Either the person or subject matter, must give jurisdiction, When the thing is personal or the remedy transitory, the person of the defendant gives jurisdiction to the chancellor as well as to the common law judge. An injunction does not operate directly on the judgment, nor on the judge who rendered it. Its action is on the person of the judgment creditors. It acts in personam, And the judgment is enjoined by the action of the chancellor on the creditor, so as to prevent him from enforcing his judgment by execution. In enjoining a judgment, the. chancellor does not assert nor assume any supremacy over the judge who rendered it. The judgment is not reversed or corrected.
It is admitted to be right in law, but as its enforcement is deemed inconsistent with equity, the chancellor, by acting, not on it or the judge who gave it, but on the person of its holder, enjoins it; and therefore, according to the principles of the common law, the person of the defendant in such a case, will give jurisdiction; see I Mad. Ch. 130.
Upon principle, the chancellor sitting in Fayette should have no more power over a judgment of the common law judge of Fayette, than the chancellor, setting in any other county, might possess.
The powers of a court of general jurisdiction will not be restricted, except by positive law, or by the nature and purposes of its institution. ' And we are clear, that the chancellor had power to enjoin the judgment in this case perpetually, unless his jurisdiction has been curtailed by express statute. ,
Circuit courts have no more ■jurisdiction in injunction cases than the quartersession •and district 'courts had. Quarter session and district courts had no power to perpetuate an injunction to a judgment rendered by a court out of their counties 'or districts.
The second section of an act of 1798; (II Littell’s Laws, 221,) declares, “that no injunction shall be granted by any court of quarter sessions to stay proceedings in any suit at law, out of their county.”
The third section of the same act declares; “that no injunction shall be granted by any district court or any judge thereof, to stay proceedings in any suit at law out of their district.”
By an act of 1800, it is provided; “that any judge of the district court may grant an injunction in any district in the state; but such injunction shall be tried in the same District as it would have been, if this provision had not been made; II Litt. Laws, 405; 5th sec.
These statutory provisions were unrepealed, when the circuit courts were established in 1802.
By the 7th section of the act establising circuit courts, (I Dig. 367,) it is enacted, among other things, that, “the said circuit courts, within their respective circuits, shall have the same power; authority and jurisdiction, which the district courts and quarter session courts are vested with; and the said circuit courts shall be governed by the same rules and regulations, by which the said district and quarter session courts are now governed, so far as .they are consistent and compatible; and where they are inconsistent, the said circuit courts shall be governed by the rules and regulations of the district courts.”
None of the foregoing provisions of the statutes of 1798,1800, and of 1802, have ever been repealed directly or indirectly, so far as we have been able to ascertain. A survey of these several enactments will leave little or no room for doubt, that the circuit courts have no more jurisdiction in injunction cases, than the tribunals which they supplanted possessed; and that these last had no power to perpetuate an injunction to a judgment rendered by a court out of their counties or districts. However ineligible or inconvenient such a restriction may be considered, the legislative wisdom has thought proper to prescribe it. A rational construction of the several statutes will not authorize any other conclusion.
We know of no statute since 1802, which has extended the'jurisdiction of the circuit courts oyer injunc *409 tions, beyond the limits which had been defined by the acts which have, been quoted.
Circuit judgeshave power to /mmiinjunc-to tí^state”" n And district judges had like power
Bill of judges wüflfo”0" onJyintke c°u’jywhere was^rendered. Chancellor ’IP.!10 juris-rpnJd"dr^ in another county.
But, where chancellor filed ¡br a special object. he may enjoia judgment renderedjn
The cirrcut judges have been vested with power to grant injunctions to cp r.C in any part of the state. But the uisi.net judges nad the same autnority. lhis should not be construed lo give die power to Vy the cases and perpetuate the injunction''. The act which is authorized is only ini.iativc. And the delegation of such authority impbes that other .vise, itwouldnot exist; and consequenl.lv, that the power to perpetuate in such cases, was considered as not existing. This isa strong argument to show that it does not now exist; because the act giving the power to grant, has withheld the right of perpetuating injunc.ions out of the county in which the judgment was rendered.
The court of appeals in Virginia has decided that “the several superior courts of chancery have power to grant injunctions lo the judgments of ali courts of common law within their respective districts, and not otherwise, the place where, the court at law is holden and not the residence of the parties furnishing the rule of jurisdiction in such cases; Cocke, et al. vs. Pollock, et al. III. and M. 499.
The statutes of Virginia gave no more power to ¿-rani than to perpetuate injunctions. They did not cx-pressly (as do those of Kentucky) circumscribe the jurisdiction by territorial limits in injunction caces; nevertheless, though they are not as express as those of this state, the exposition given in the case, in I H. and M. has been acquiesced in. '
We feel bound to conclude,, that, if an original bill , to jr[ had been hied by Chamber in Montgomery or Clark, t enjoin the julgmnt in Foy'U\ the chancellor wou] have had no jurisdiction.
But notwxthstandu'g this conclusion, we aie of opinion that the peculiar circumstances of this case gave the judge in oiaik, tee power to perpetuate the mjunction.
Cases may occur, in which a chancellor . having, by locality- or otherwise, jurisdiction of a bill, filed for a special object, may enjoin the judgment of a court some other than- that in vrhich he adjudicates *410 provided such an injunction be incidental, merely to the decree on the subject matter, over which he had properly taken cognizance.
If plaintiff in judgmeutof one county file a bill of injunction in another; he puts the chancellor in possession of the whole case and he way enjoin the judgment perpetually, i: a final determination of the case require it.
Mason, and not Chambers, brought the case into the Montgomery, and afterwards into the Clarke circuit court. When he filed his bill, seeking a decree for a set-off, Chambers had a right, in his answer, to resist the set-off, by claiming a specific execution.
By filing his bill in. Montgomery, Mason put his whole case, in all its ramifications and consequences, in the possession and power of the~chancellor, to whom he appealed. If a specific execution were deemed just and equitable, the chancellor would, of course, decree it, and refuse, for that reason, the set-off. And having possession of the case and jurisdiction over it, he should have power to close it wholly, and thereby prevent the confusion, and incongruity which might result from two suits pending in different courts for the ■ same thing in effect; one in Clarke for a specific execution of the contract, and the other in Payette, for a perpetuation of an injunction to Mason’s judgment for an alleged breach of the contract by Chambers, and which judgment would be virtually enjoined by a decree for specific, execution. After obtaining a decree for a specific execution, in the suit brought by Blasón himself, Chambers’ representatives should not be driven to the necessity of applying, by a new bill, to the chancellor in Fayette, to prevent (he enforcement of Mason’s judgment, the surrender of which, the chancellor of Clarke ■had, in effect, decreed.
The case which, in all its aspects, is an intieger, should not be partitioned between two separate and perhaps conflicting jurisdictions. Asthechancellor in Clarke had power to decree a specific execution, when he gave such a decree, he had all the subsidiary power which might be necessary to carry his decree into full and final effect. And to this end a perpetual injunction to Mason’s judgment, was a natural and proper mean. Mason having put himself and his judgment in the power of the circuit court of Clarke, may be compelled by that court, to submit to the decree; and in order to do this effectually, he must abandon his judgment for damages, to which he cannot be entitled, when, by a *411 specific execution, he gets the land and its intermediate profits. The same chancellor who enjoined Chambers’ judgment, ought to have the power also, to enjoin that of Mason; otherwise he could not do justice. Besides, Mason never objected to the jurisdiction of the Clarke circuit court over his judgment.
Petition for a re-hearing.
James Trimble and Bledsoe, for Mason; Dana, and Hanson, for Chambers.
It was irregular to proceed with this case, whilst the other case remanded by this court was progressing. Indeed the whole procedure throughout in all the courts, common law and chancery, has been extraordinary. But as the parties seem, by mutual consent, to have neglected the first suit, and to have concentrated all their efforts upon this, we cannot, (as they have not invited it) notice any thing out of the decree in this case. It was improper for Mason to file his bill for a set-off or to sue on the covenant after there had been virtually a decree for a specific execution. It was also irregular for Chambers to ask another decree for specific execution. But the first case having abated, and the regularity of the proceedings in this case not having been questioned by either party, the decree should settle the whole controversy and close it effectually.
The circuit court ought therefore to have decreed that Mason should surrender, or not enforce his judgment in Fayette; having full power to enforce such a decree by operating on his person. The decree itself is anomalous, after disclaiming jurisdiction to enjoin the judgment, the court should not decree what the Fay-ette circuit court would or ought to da.
Wherefore, as the court erred in not perpetually enjoining the judgment of the Fayette circuit court,the decree is reversed, and the cause remanded for such decree to be entered.